IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

(1) TAYLOR BURKE, as the Personal
Representative of the Estate of
Thomas Gay, Deceased,

      Plaintiff,

v.

(1) CITY OF BARTLESVILLE;
(2) OFFICER JESSICA PITTS; AND
(3) OFFICER WILLIAM LEWIS,

      Defendants.

Case No. 20-cv-00244-CVE-FHM

ATTORNEY LIEN CLAIMED
JURY TRIAL DEMANDED

**COMPLAINT**

COMES NOW the Plaintiff, Taylor Burke ("Plaintiff" or "Mr. Burke"), as the Personal Representative of the Estate of Thomas Gay, Deceased ("Thomas"), and for his causes of action against the above-named Defendants, alleges and states the following:

**INTRODUCTORY STATEMENT**

1. On June 1, 2019, Thomas Gay was unnecessarily shot and killed by Officer Jessica Pitts and Officer William Lewis. As set forth herein, the events leading up to the shooting establish that Thomas did not pose an immediate threat to the Officers or the general public. The excessive deadly force used by the Defendants was objectively unreasonable and in violation of Thomas's Fourth Amendment rights.

**JURISDICTION AND VENUE**

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides

1

for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

3. The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

4. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

5. Plaintiff is a resident of Tulsa, Oklahoma, and the duly-appointed Special Administrator of the Estate of Mr. Thomas Gay ("Thomas"). The survival causes of action in this matter are based on violations of Thomas's rights under the Fourth Amendment to the United States Constitution.

6. Defendant City of Bartlesville ("City" or "Defendant City"), Oklahoma is a municipality located in both Washington and Osage County, Oklahoma. The City provides and employs the Bartlesville Police Department. ("BPD").

7. Defendant Officer Jessica Pitts ("Officer Pitts" or "Pitts") was, at all times relevant hereto, acting under color of state law as an employee of the Bartlesville Police Department ("BPD"). Officer Pitts is sued in her individual capacity for her personal involvement and participation in the violation of Thomas's rights, while acting under color of State law, as set forth herein. At all times relevant hereto, Pitts was acting within the scope of her employment as a Bartlesville Police Officer.

8. Defendant Officer William Lewis ("Officer Lewis" or "Lewis"), was, at all times

relevant hereto, acting under color of state law as an employee of the Bartlesville Police Department ("BPD"). Officer Lewis is sued in his individual capacity for his personal involvement and participation in the violation of Thomas's rights, while acting under color of State law, as set forth herein. At all times relevant hereto, Lewis was acting within the scope of his employment as a Bartlesville Police Officer.

## FACTUAL BACKGROUND

9. Paragraphs 1-8 are incorporated herein by reference.

### THE UNNECESSARY SHOOTING OF THOMAS GAY

10. On June 1, 2019, Thomas Gay was performing work on his father, Willis Gay's, home located at 1328 Madison, Bartlesville Blvd., Bartlesville, Oklahoma, with his brother Willis Gay, Jr. As the men performed their work, Thomas's father and brother noted that Thomas was beginning to act strange.

11. Willis observed that Thomas was increasingly paranoid that people were out to get him. Thomas began pacing aimlessly in Willis' home and was not very responsive to Willis' concerns.

12. At approximately 8:00 p.m. on June 1, 2019, Willis Gay became concerned that Thomas was having a stroke. Unsure of what was going on with Thomas, Willis called his ex-wife and Thomas' mother to ask her for advice on how to handle Thomas' peculiar behavior. Thomas' mother was disturbed by what Willis told her and she encouraged Willis to call the police.

13. Willis called the Bartlesville Police Department ("BPD") and reported that Thomas was acting unusually paranoid. Willis informed the BPD dispatch that he did not think

Thomas was dangerous, just that he needed help removing Thomas from his home. In the phone call with police dispatch Willis made it clear that Thomas was not being aggressive or combative.

14. At approximately 7:58 p.m., dispatch contacted Officer Pitts, and advised Officer Pitts to head to 1328 South Madison in response to a call from a father (Willis Gay) who advised that his adult son was "high" on something and that he needed help having him removed from his home.

15. Officer Pitts and Officer Lewis arrived to Willis' home at approximately 8:04 p.m. When the officers arrived, they made contact with Willis who again explained the situation and reiterated that Thomas was not dangerous. Willis took Officers Pitts and Lewis through the garage and into his living room.

16. Upon entering the living room, Willis and the Officers observed Thomas standing on the outside of the living room holding a framed picture. Thomas began to retreat backwards down a hallway and into a bedroom in the back of the home.

17. The BPD Officers and Willis Gay followed Thomas as he walked towards the back of the home. The Officers found Thomas in the back corner of a bedroom in the back of the home.

18. Even though Thomas was not acting in an aggressive manner, Officer Lewis decided to deploy his Taser. Officer Lewis was successful in his use of the Taser and the shock sent Thomas to the ground. At some point during the process of deploying the Taser, Officer Pitts had fallen into a closet in the bedroom.

19. Upon being tased, a disoriented Thomas eventually arose from the ground and attempted to flee the bedroom. At that point, Officer Lewis was standing between Thomas and

the door to the bedroom. Officer Lewis was in a perfect position to subdue Thomas and prevent him from escaping.

20. As Thomas attempted to elude Officer Lewis, Officer Pitts, who was still in the closet of the bedroom, drew her firearm and shot Thomas twice.

21. At approximately 8:07 p.m., Officer Pitts advised dispatch that shots were fired, approximately three (3) minutes and (12) seconds after the Officers arrival.

22. Thomas was pronounced dead at the scene from the multiple shots.

23. The autopsy completed by the Oklahoma Medical Examiner ("OME") declared that Thomas died at 8:14 p.m. The Report stated that Thomas had been shot in both the chest and the right leg, with the official cause of death being listed as "multiple gun shot wounds."

24. Thomas died as proximate result of the unreasonable and excessive use of force used by Officers Pitts and Lewis.

25. Officer Lewis stated later that when he initially saw Thomas standing near the living room, Thomas was holding "a bow with multiple objects draped across it." Lewis stated that "Thomas was holding the bow in a manner you would hold a melee weapon."

26. There is no standard definition of a "melee weapon" but it has been described as "any weapon used in direct hand-to-hand combat." The term apparently originated from the Dungeons & Dragons roleplaying game.

27. The "melee weapon" that was booked into evidence by BPD appears to be a small child's recurve bow measuring approximately twenty-eight (28) inches long, with no string attached.

28. Thomas was "armed" only with a toy recurved bow and was attempting to run

5

*away* from the Officers. Thomas had not threatened harm to himself, the Officers, or anyone else.

29. Thomas was never informed by the Officers that he was under arrest, nor was he warned that he would be shot by Officer Pitts.

30. The use of deadly force is justified under the Fourth Amendment [only] if a reasonable officer in the Defendants' position would have had probable cause to believe that there was a threat of serious physical harm to themselves or others. *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1154 (10th Cir. 2010) (quoting *Walker v. City of Orem*, 451 F.3d 1139,1159 (10th Cir. 2006).

31. Thomas was unarmed, clearly outmanned and virtually surrounded by the Officers.

32. Thomas had not committed, nor was he in the act of committing, a serious and/or violent crime and was not a "dangerous fleeing felon". There is no evidence to suggest that Thomas intended to cause serious bodily harm or death to either the Officers or a member of the general public.

33. There was simply no justification for Officer Pitts to shoot this young man.

34. Pitts and Lewis' use of deadly force, under the circumstances, was utterly unnecessary, unjustified and excessive, in clear violation of Thomas's Fourth Amendment rights.

35. As a direct and proximate cause of Officer Pitts and Officer Lewis' use of excessive force, Thomas suffered actual physical injuries (including death), unnecessary physical pain, mental and physical pain and suffering, humiliation, embarrassment, and other damages and losses as described herein entitling Plaintiff to recover compensatory and special damages on behalf of Thomas's Estate, in amounts to be determined at trial.

**MUNICIPAL POLICY OR CUSTOM**

36.     Paragraphs 1-35 are incorporated herein by reference.

37.     There is an affirmative link between the aforementioned excessive force utilized by Officers Pitts and Lewis and policies, practices and/or customs which the City promulgated, created, implemented and/or possessed responsibility for.

38.     There are longstanding, systemic deficiencies in the BPD's training with regard to the use of violent and deadly force. The City has long known of these systemic deficiencies and the substantial risks to persons like Thomas but has failed to alleviate those deficiencies and risks.

39.     For instance, on or about October 26, 2016, BPD responded to a domestic violence incident whereby a man was assaulting a woman. BPD Officers attempted to use a Taser, but it did not stop the man. The Officer attempted to get the man off of the woman one more time before beginning to unleash a "fusillade of bullets in the general direction" of the man, while the woman lay on the ground in the field of fire. The man died and the woman was injured as a result of the Officers gun fire.

40.     On January 17, 2018, BPD Officers were executing a search warrant for a young man suspected of possessing marijuana. The Officers went to the home of the suspect's mother looking for the man. The suspect's 72-year-old mother answered the door and fired a bb gun in the direction of the Officers. The suspect yelled to the Officers that it was a bb gun, but the Officers opened fire on the woman anyway. The 72-year-old woman was killed.

41.     Despite being aware of the need for more or different supervision and/or training since at least October of 2016, the City did not train, re-train, or otherwise address the use of

appropriate force with its Officers—including Officers Pitts and Lewis.

42. Plainly, the City has failed to properly train, supervise and/or discipline its employees with regard to the use of violent and deadly force. The need for more or different supervision and/or training was obvious, and the inadequacies were likely to result in the violation of constitutional rights, yet the City failed to take meaningful corrective action. Due to the City's apathetic,(if not non-existent) approach to employee discipline for violations of use of force policies, there was an atmosphere of tolerance of, and acquiescence in, excessive use of force. In other words, there was no consequential accountability for officers' use of excessive force within the City.

43. There is a causal link between these policies, practices and customs and Thomas' death.

## CAUSE OF ACTION

### CLAIM I. EXCESSIVE USE OF FORCE
### (Fourth Amendment; 42 U.S.C. § 1983)

**A. Individual liability and Underlying Violation.**

44. Paragraphs 1-43 are incorporated herein by reference.

45. At the time of the complained of events, Thomas, as a free person, had a clearly established constitutional right under the Fourth Amendment to be secure in his person and free from unreasonable seizure through objectively unreasonable excessive force to injure him and his bodily integrity.

46. Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

47. In the totality of the circumstances, at the time that deadly force was used by Officers Pitts and Lewis, Thomas possessed only a small toy bow and had not threatened either

Officers . Furthermore, Thomas posed no immediate threat of serious harm to himself, the officers, or anyone else.

48. The use of deadly force by Pitts and Lewis under such circumstances was excessive and objectively unreasonable.

49. The use of force, as described herein, also involved reckless, callous, and deliberate indifference to Thomas's federally protected rights.

50. As a direct proximate result of Officer Pitts and Officer Lewis' unlawful conduct, Thomas suffered actual physical injuries (including death), unnecessary physical pain, mental and physical pain and suffering, humiliation, embarrassment, and other damages and losses as described herein entitling Plaintiff to recover compensatory and special damages on behalf of Thomas's Estate, in amounts to be determined at trial.

51. As a direct proximate result of Officers Pitts and Lewis unlawful conduct, Thomas Gay's heirs have suffered damages, including, but not limited to, pecuniary loss, funeral expenses, loss of consortium, grief, loss of companionship, pain and suffering.

52. Plaintiff is entitled to punitive damages on his claims brought pursuant to 42 U.S.C. § 1983 as Defendants' conduct, acts and omissions alleged herein constitute reckless or callous indifferences to Thomas Gay's federally protected rights.

**B. Municipal Liability (Applicable to the City)**

53. Paragraphs 1-52 are incorporated herein by reference.

54. There is an affirmative link between the deprivation of Thomas Gay's constitutional rights and BPD policies, practices and/or customs which the City promulgated, created, implemented and/or possessed responsibility for.

55. Those policies and/or customs are set out in paragraphs 36-43.

56. Additionally, BPD officers have an established policy, practice, and/or custom of failing to deescalate situations with civilians and resort to deadly force far sooner than necessary.

57. Upon information and belief, the City/BPD has failed to train its officers how to deescalate situations.

58. Further, BPD officers have an established practice and/or custom of using more force, or a higher level of force, than is reasonably necessary during encounters with civilians.

59. The City/BPD knew, must have known or should have known that -- due to its obviously inadequate training, supervision and discipline -- unconstitutional conduct toward arrestees/detainees by BPD personnel was probable and almost certain, but failed to take reasonable measure to alleviate the risks of harm.

60. Thus, the City has created and tolerated and maintained long-standing, unconstitutional department-wide customs, law enforcement related policies, procedures and practices, and failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference with respect to uses of force.

61. The City, through its continued encouragement, ratification, approval and/or maintenance of the aforementioned policies, customs, and/or practices; in spite of their known and obvious inadequacies and dangers; has been deliberately indifferent to citizens', including Thomas Gay's, health and safety.

62. As a direct and proximate result of the aforementioned customs, policies, and/or practices, Thomas suffered actual physical injuries (including death), unnecessary physical pain, mental and physical pain and suffering, humiliation, embarrassment, and other damages and losses as described herein entitling Plaintiff to recover compensatory and special damages on behalf of Thomas's Estate, in amounts to be determined at trial.

63. As a direct proximate result of the aforementioned customs, policies, and/or practices, Thomas Gay's heirs have suffered damages, including, but not limited to, pecuniary loss, funeral expenses, loss of consortium, grief, loss of companionship, pain and suffering.

64. Plaintiff is entitled to punitive damages on his claims brought pursuant to 42 U.S.C. § 1983 as Defendants' conduct, acts and omissions alleged herein constitute reckless or callous indifferences to Thomas Gay's federally protected rights.

**WHERFORE,** based on the foregoing, Plaintiff prays this Court grant him the relief sought, including but not limited to actual and punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, the costs of bringing this action, a reasonable attorney's fee, along with such other relief as is deemed just and equitable.

Respectfully submitted,

**SMOLEN LAW, PLLC**

/s/Donald Smolen, II
Donald E. Smolen, II, OBA #19944
Laura L. Hamilton, OBA #22619
John W. Warren, OBA #33635
611 S. Detroit Ave.
Tulsa, OK 74119
(918) 777-4LAW (4529)
(918) 890-4529 (Fax)
www.smolen.law
*Attorneys for Plaintiff*